FILED

2021 May-11  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TINA JONES; and<br>BOBBIE SIMMONS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| ALFA INSURANCE, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### STATEMENT OF JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 29 U.S.C. §621, *et seq*, known as the Age Discrimination in Employment Act of 1967 ("ADEA"); and 29 U.S.C. §1001, *et seq*, known as the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

2.      This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction pursuant to 28 U.S.C. §1343(a) and concurrent jurisdiction pursuant to 29 U.S.C. §1132(e), as it relates to ERISA claims.

3.      Venue is proper in this district, pursuant to 28 U.S.C. §1391(b)(3), as the named defendant is subject to the Court's personal jurisdiction in this judicial district with respect to this action; and 29 U.S.C. §1132(e)(2), as the named defendant may be found in this judicial district.

4.      Plaintiff has fulfilled all conditions precent to the institution of this action, as required.

**STATEMENT OF THE PARTIES**

5.      Plaintiff, Tina Jones (hereinafter referred to as "Plaintiff" or "Jones"), is an individual over the age of nineteen (19) years. Jones is a resident of the State of Alabama. At all times relevant to this Complaint, Jones was an employee of the named defendant and a beneficiary of the retirement plan ("Plan") at issue in this action. The Plan was provided to Jones by the named defendant, which sponsors the Plan.

6.      Plaintiff, Bobbie Simmons (hereinafter referred to as "Plaintiff" or "Simmons"), is an individual over the age of nineteen (19) years. Simmons is a resident of the State of Alabama. At all times relevant to this Complaint, Simmons was an employee of the named defendant and a beneficiary of the retirement plan ("Plan") at issue in this action. The Plan was provided to Simmons by the named defendant, which sponsors the Plan.

7.      Defendant, Alfa Insurance (hereinafter referred to as "Defendant" or "Alfa"), is an entity subject to suit under ADEA and ERISA. At all times relevant herein, Defendant was Plaintiffs' employer and provided and sponsored their retirement plans.

**STATEMENT OF THE FACTS**

PLAINTIFF TINA JONES

8.      Plaintiff Jones is an individual over the age of forty (40) years.

9.      Jones began working for Alfa in the year 1990.

10.     Due to Jones' hard work and dedication over the years, she was promoted to the position of Assistant Underwriter in the Homeowner Department.

11.     In or near 2018, Jones began to notice that Alfa was treating older workers, such as herself, less favorably than similarly situated younger workers.

12.     More specifically, the company introduced new systems into the workplace but failed to train Jones and other older workers on how to operate the system; however, younger workers were trained.

13.     Because of this disparity, Jones complained on at least a monthly basis that she and other older workers needed to be trained. Unfortunately, nothing was ever done.

14.     In fact, management began to involve Jones and other older workers less and less. As a result of complaining, the older workers collectively found themselves even more isolated. It seemed to Jones as if management would actively avoid them but, at the same time, would go above and beyond for younger workers if they had any complaints or issues.

15.     However, Jones continued to complain about the disparate treatment by Alfa. The last time she complained about older workers not being properly trained was in or near early October 2019. Just two (2) weeks later, Jones received notice that she was being laid off.

16.     Although management informed Jones that her position was no longer needed at the company, she soon found out that not everyone was being laid off. Rather, the company handpicked who would be laid off and who could either keep their job or be transferred to a different position in the company.

17.     The workers laid off were older in age, much like Jones, while younger, less qualified workers were permitted to continue working; furthermore, the younger workers who

3

were not laid off were not certified to work the positions for which they were retained. Alfa laid off much more qualified older workers in exchange for much less qualified younger workers.

18.     In addition to being laid off, Jones' retirement benefits were adversely affected. More specifically, Jones had been working at Alfa for twenty-nine (29) years. She had less than five (5) years before she could retire with full benefits.

19.     As a part of her benefits and because she had been an employee with Alfa during the relevant time period, Jones was a part of Alfa's pension plan benefits.  The pension benefits were covered by ERISA.

20.     Many years prior to the lay-off decisions at issue in this case, Alfa made the decision to get rid of their pension plan.  However, employees that had been a part of the program while it existed were allowed to be "grandfathered" in the plan and it would remain effective as long as that grandfathered participant remained with the company and retired in good standing.

21.     However, soon after the pension plan had been eliminated, Alfa began systematically getting rid of employees who had been grandfathered in as a means to eliminate their obligations to the pension beneficiary.  Alfa did this because those employees who had been grandfathered into the pension plan would be entitled to much higher monetary benefits than those who retired but were not a part of the pension plan.

22.     Usually, the older employees or those with the most seniority, such as Jones, were most likely to be a part of the grandfathered pension plan. As such, Jones had a target on her back because her eventual retirement would cost the company well over six figures more that it would someone not a part of the pension plan.

23.     However, due to being laid off, Jones will be unable to obtain the full benefits she had worked so long and hard for, even though she was a participant in Alfa's retirement plan and was entitled to receive the benefits, including pension, provided by the Plan.

24.     Alfa's act of terminating/laying off older employees that were a part of the pension plan was intentional and designed to not only get rid of older workers but also cut expenses related to the grandfathered pension plan.

PLAINTIFF BOBBIE SIMMONS

25.     Plaintiff Simmons is an individual over the age of forty (40) years old.

26.     Simmons began working for Alfa in 1985.

27.     Due to Simmons' hard work and dedication over the years, she was promoted to the position of Assistant Underwriter in the Homeowner Department; moreover, she was one of the top five (5) most senior employees in her department.

28.     In or near 2018, Simmons began to notice that Alfa was treating older workers, such as herself, less favorably than similarly situated younger workers.

29.     More specifically, the company introduced new systems into the workplace but failed to train Simmons and other older workers on how to operate the system; however, younger workers were trained.

30.     Because of this disparity, Simmons complained on at least a monthly basis that she and other older workers needed to be trained. Unfortunately, nothing was ever done.

31.     In fact, management began to involve Simmons and other older workers less and less. As a result of complaining, the older workers collectively found themselves even more

isolated. It seemed to Simmons as if management would actively avoid them but, at the same time, would go above and beyond for younger workers if they had any complaints or issues.

32.     However, Simmons continued to complain about the disparate treatment by Alfa. The last time she complained about older workers not being properly trained was in or near early October 2019. Just two (2) weeks later, Simmons received notice that she was being laid off.

33.     Although management informed Simmons that her position was no longer needed at the company, she soon found out that not everyone was being laid off. Rather, the company handpicked who would be laid off and who could either keep their job or be transferred to a different position in the company.

34.     The workers laid off were older in age, much like Simmons, while younger, less qualified workers were permitted to continue working; furthermore, the younger workers who were not laid off were not certified to work the positions for which they were retained. Alfa laid off much more qualified older workers in exchange for much less qualified younger workers.

35.     In addition to being laid off, Simmons' retirement benefits were adversely affected. More specifically, Simmons had been working at Alfa for thirty-four (34) years. She had less than two (2) years before she could retire with full benefits.

36.     As a part of her benefits and because she had been an employee with Alfa during the relevant time period, Simmons was a part of Alfa's pension plan benefits.  The pension benefits were covered by ERISA.

37.     Many years prior to the lay-off decisions at issue in this case, Alfa made the decision to get rid of their pension plan.  However, employees that had been a part of the program

6

while it existed were allowed to be "grandfathered" in the plan and it would remain effective as

long as that grandfathered participant remained with the company and retired in good standing.

38.     However, soon after the pension plan had been eliminated, Alfa began

systematically getting rid of employees who had been grandfathered in as a means to eliminate

their obligations to the pension beneficiary.  Alfa did this because those employees who had been

grandfathered into the pension plan would be entitled to much higher monetary benefits than those

who retired but were not a part of the pension plan.

39.     Usually, the older employees or those with the most seniority, such as Simmons,

were most likely to be a part of the grandfathered pension plan. As such, Simmons had a target on

her back because her eventual retirement would cost the company well over six figures more than

it would someone not a part of the pension plan.

40.     However, due to being laid off, Simmons will be unable to obtain the full benefits

she had worked so long and hard for, even though she was a participant in Alfa's retirement plan

and was entitled to receive the benefits, including pension, provided by the Plan.

41.     Alfa's act of terminating/laying off older employees that were a part of the pension

plan was intentional and designed to not only get rid of older workers but also cut expenses related

to the grandfathered pension plan.

**FIRST CAUSE OF ACTION**
**Age Discrimination**
**under 29 U.S.C. §621,** *et seq***.**

42.     Plaintiffs re-allege and incorporate by reference paragraph nos. 8-41 with the same

force and effect as if fully set out herein and further state as follows:

43.     Plaintiffs are both over the age of forty (40) years.

44.     Defendant qualifies as an employer under ADEA, as it is an industry affecting commerce with over twenty (20) employees for each working day every year.

45.     At all times relevant to this Complaint, Plaintiffs were, and remain, fully qualified for their positions.

46.     After being laid off, Plaintiffs were replaced by younger, less qualified individuals.

47.     More specifically, before they were laid off, the company failed to train Plaintiffs on its new systems but was quick to train all the younger employees. Whenever Plaintiffs complained about this disparity and raised the fact that they needed to be trained, their complaints fell on deaf ears.

48.     In fact, the company went even further and proceeded to exclude Plaintiffs from all meetings and work-related assignments.

49.     Defendant has no legitimate non-discriminatory reasons to fail to train Plaintiffs and to eliminate their positions, only to replace them with less qualified younger individuals.

50.     These acts discussed throughout this Complaint affected the terms, conditions, and/or privileges of Plaintiffs' employment when they were forced to continually be excluded from work projects.

51.     Defendant, through the conduct of its agents, has violated Plaintiffs' rights under ADEA.

52.     As a result of Defendant's actions, Plaintiffs have suffered harm including, but not limited to, loss of employment opportunities, compensation and other benefits and conditions of

employment. Additionally, Plaintiffs have suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### Retaliation
### under 29 U.S.C. §621, *et seq*.

53.     Plaintiffs re-allege and incorporate by reference paragraph nos. 8-41 with the same force and effect as if fully set out herein and further state as follows:

54.     In or near 2018, Plaintiffs began noticing that Alfa would treat older workers, such as themselves, less favorably than their younger counterparts.

55.     More specifically, the company failed to train Plaintiffs on its new systems but was quick to train all the younger employees.

56.     Plaintiffs would complain about this disparate treatment on a monthly basis, thereby engaging in protected activity. However, nothing was ever done to remediate the issues Plaintiffs complained about.

57.     Rather, the company went even further and proceeded to exclude Plaintiffs from all meetings and work-related assignments.

58.     Moreover, just a mere two (2) weeks after their final complaint, Plaintiffs were laid off from their positions and replaced with younger, less qualified workers.

59.     Defendant, through the conduct of its agents, has violated Plaintiffs' rights under ADEA.

60.     As a result of Defendant's actions, Plaintiffs have suffered harm including, but not limited to, loss of employment opportunities, compensation and other benefits and conditions of

employment. Additionally, Plaintiffs have suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**THIRD CAUSE OF ACTION**
**Interference**
**under ERISA Section 510**

61.     Plaintiffs re-allege and incorporate by reference paragraph nos. 8-41 with the same force and effect as if fully set out herein and further state as follows:

62.     ERISA § 510, 29 U.S.C. § 1140 states, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan[…]."

63.     Plaintiffs would have been entitled to participate in the ERISA pension plan by virtue of their employment with Defendant had they not been laid-off in a discriminatory manner, and as such, were entitled to certain protections.

64.     Defendant selected Plaintiffs for layoff because of their age.  Defendant was aware that their adverse employment decision would also negatively affect Plaintiffs because they were both participants in the ERISA pension plan.

65.     Defendant's actions had the intended effect of interfering with Plaintiff's attainment of pension benefits under the ERISA plan.

66.     Defendant's discriminatory selection of Plaintiffs to be laid off violated ERISA § 510, 29 U.S.C. § 1140, inasmuch as it interfered with the attainment of rights to which Plaintiffs were entitled to under the pension benefits plan covered by ERISA.

10

67.     Due to Defendant's unlawful actions, Plaintiffs were injured and are therefore entitled to and seeks all available relief, including but not limited to back pay, front pay, lost pension benefits, prejudgment interest, attorneys' fees/costs, and/or further appropriate equitable relief to be determined at trial, for their wrongful lay-off.

## FOURTH CAUSE OF ACTION
### Termination
### under ERISA Section 510

68.     Plaintiffs re-allege and incorporate by reference paragraph nos. 8-41 with the same force and effect as if fully set out herein and further state as follows:

69.     ERISA § 510, 29 U.S.C. § 1140 states, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan[…]."

70.     Defendant laid both Plaintiffs off effectively terminating Plaintiffs' employment. Plaintiff were chosen for lay-off in order to deny them pension benefits to which they were otherwise entitled to under ERISA.

71.     Defendant's discharge of Plaintiffs violated ERISA § 510, 29 U.S.C. § 1140 inasmuch as Defendant unlawfully discharged Plaintiffs in order to prevent them from exercising rights to which they were entitled under ERISA.

72.     Due to Defendant's unlawful actions, Plaintiffs were injured and are therefore entitled to and seek all available relief, including but not limited to back pay, front pay, lost pension benefits, prejudgment interest, attorneys' fees/costs, and/or further appropriate equitable relief to be determined at trial, for their wrongful termination under ERISA § 510.

11

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1.      Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant are violative of the rights of Plaintiffs as secured by 29 U.S.C. §621, *et seq*, known as the Age Discrimination in Employment Act of 1967 ("ADEA"); and 29 U.S.C. §1001, *et seq*, known as the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

2.      Grant Plaintiffs a permanent injunction enjoining Defendant, their agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate 29 U.S.C. §621, *et seq*, known as the Age Discrimination in Employment Act of 1967 ("ADEA"); and 29 U.S.C. §1001, *et seq*, known as the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

3.      Enter an Order requiring Defendant to make Plaintiffs whole by awarding Plaintiffs back-pay (plus interest), reinstatement or front-pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4.      Plaintiffs further pray for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation.

5.      Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

### PLAINTIFFS DEMAND TRIAL BY STRUCK JURY ON
### ALL ISSUES TRIABLE BY JURY

Respectfully submitted,

*Sidney Jackson*                    .

Samuel Fisher
Sidney M. Jackson
*Attorneys for the Plaintiff*

12

**WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sjackson@wigginschilds.com
sfisher@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to Be Sent by Certified Mail to the Following:**

**DEFENDANT'S ADDRESS**

**Alfa Mutual Insurance Company**
**c/o Legal Dept.**
2108 E SOUTH BLVD
MONTGOMERY, AL 36116